IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ALANA STATES,            )
                         )
    Plaintiff,           )
                         )
                         )    No. CIV-15-1214-M
v.                       )
                         )
CAROLYN W. COLVIN,       )
  Acting Commissioner of Social   )
  Security Administration,   )
                         )
    Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative Background and Medical Record

Plaintiff filed her application for benefits on May 23, 2012 (protective filing date), alleging that she became disabled on September 1, 2010, due to bipolar disorder, anxiety disorder, sensory integration disorder, high blood pressure, "low vision" in left eye, "depth perception," insulin resistance syndrome, polycystic ovarian syndrome, and insomnia. (TR

1

165). At the time she filed her application, Plaintiff was 21 years old, and she was 23 years old at the time of the administrative hearing. Plaintiff had obtained a high school equivalency degree, and she previously worked as a child care attendant. (TR 150). At her hearing, Plaintiff amended her alleged onset date to May 23, 2012. (TR 33-34).

Plaintiff's mother completed a Third Party Function Report in which she stated that Plaintiff "has difficulty concentrating and finishing tasks. Her anxiety overcomes her and she has a hard time being around people." (TR 175). Her mother stated that Plaintiff had poor eye-hand coordination, was "just always zoned out," and was "afraid of being in public." (TR 180-81).

In Plaintiff's Function Report, Plaintiff's responses indicated she was dependent on her mother to remind her to perform chores, take care of her personal care needs, and take her medications but she could prepare meals, perform some household chores, and shop for clothing, groceries, and personal care products. Plaintiff also stated that she liked to read, watch movies, listen to music, and visit her cousins and grandparents at their homes. She stated she became anxious "in public or around people." (TR 199). In a later Function Report, Plaintiff stated that "[s]ocial anxiety limit[ed her] ability to interact with others." (TR 211). She also described lack of motivation and decreased ability to concentrate due to depression, "mania" causing inability to concentrate, and also "hallucinations, erratic behavior, and 'identity crisis,' making me unreliable. I have gone over 1 week without sleep." (TR 211). Plaintiff stated that "panic attacks behind the wheel" and "vision problems" prevented her from driving. (TR 214). However, she visited with friends through

2

text messaging, regularly socialized with family members, and attended therapy sessions.

In another written report, Plaintiff stated,

> I do not shower more than once a month and wash my hair once a week. I have trouble brushing my hair and teeth and washing my face. I have to be reminded to take my medication. My parents have to provide me with groceries and cook my meals. My bedroom is filled with trash and dishes. . . . Depression causes exhaustion to the point where I cannot walk across a room. I do not cook for myself or do any types of cleaning. I cannot go into a public place alone. I cannot focus on tv shows, movies, books, music. I am always restless. I no longer have any contact with friends and rarely leave the house. I still cannot drive and to[o] anxious to take public transportation.

(TR 237).

The medical record reflects that Plaintiff was hospitalized in December 2010 for three days for mental health treatment following an intentional overdose of her antidepressant medication "after [an] altercation with [her] boyfriend." (TR 269). Her treating psychiatrist, Dr. Feliciano, noted in a discharge summary that Plaintiff was diagnosed with bipolar II disorder and panic disorder without agoraphobia. (TR 290). Dr. Feliciano further noted that during her brief inpatient treatment Plaintiff actively participated in therapy, exhibited positive interactions with staff and peers. She was discharged in stable condition with several psychotropic medications.

In January 2011, Plaintiff was treated by a family physician, Dr. Stewart, who prescribed medication for benign hypertension. In June 2012, Dr. Stewart noted that Plaintiff's hypertension was well controlled on medication. (TR 396). Plaintiff reported she was exercising more in an effort to lose weight. In June 2012, Dr. Stewart prescribed

medication to treat Plaintiff's polycystic ovarian syndrome.

Plaintiff was treated by Dr. Scearce, D.O., beginning in September 2010 through May 2012 for bipolar I disorder. (TR 348-375). Dr. Scearce prescribed mood-stabilizing and anti-depressant medications, and the doctor noted on multiple occasions that Plaintiff was not compliant with her prescribed medications. (TR 352, 354, 356, 360, 365, 367, 369). In March 2012, Plaintiff reported to Dr. Scearce that her depression was "fine" and her moods were "more stable." (TR 354). Plaintiff reported in May 2012 that she was taking her medications as prescribed, she was feeling much better, her mood was "more stable," and her anxiety was "better controlled." (TR 348).

There are additional notes of psychiatric treatment of Plaintiff by Dr. Ellis, D.O., between September 2012 and April 2014. (TR 405-08, 424-27, 440-42). In August 2012, Dr. Crall, Ph.D., conducted a consultative psychological evaluation of Plaintiff for the agency. (TR 377-81). Dr. Clark conducted a mental status examination of Plaintiff for Plaintiff's attorney in September 2012 (TR 414-16) and updated this report in February 2013. (TR 413). Dr. Clark also completed a written "Medical Evaluation [for] Affective Disorders" form in October 2013. (TR 420-21). Dr. Clark opined that Plaintiff could not function in a work-like setting on a sustained basis because her "depressive episodes involve inability and/or struggle to maintain basic needs (grooming, getting out of bed). Concentration is also severely impaired during depressed episodes. Episodes are frequent and unpredictable." (TR 421).

II. ALJ's Decision

Following the agency's well-established five-step sequential evaluation process, the

4

ALJ found that Plaintiff was not disabled at the fifth and final step. In making this determination, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her application date of May 23, 2012. At step two, the ALJ determined that Plaintiff had severe impairments of bipolar disorder and panic disorder. At the third step, the ALJ concluded that these impairments did not meet or medically equal an impairment deemed to be disabling under the agency's Listing of Impairments.

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except that she could perform only one-to-two step tasks and have no contact with the general public or supervisors. Based on this RFC assessment, the ALJ found that Plaintiff was not able to perform her previous job as a child care provider.

Reaching the fifth and final step, the ALJ found that considering Plaintiff's age, education, work experience, and assessed RFC, there are jobs that exist in significant numbers in the economy that Plaintiff could perform. Relying on the VE's hearing testimony concerning the availability of jobs for an individual with Plaintiff's assessed RFC, the ALJ found that Plaintiff could perform the representative jobs of merchandise marker, housekeeping cleaner, and routing clerk. Because Plaintiff was capable of performing work existing in significant numbers in the economy, the ALJ concluded that Plaintiff was not disabled and not entitled to benefits.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v.

Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

The agency follows a five-step sequential evaluation procedure in resolving the claims

of disability applicants. See 20 C.F.R. §§ 404.1520(a)(4), (b)-(g), 416.920(a)(4), (b)-(g). "If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability benefits only if he [or she] is not able to perform other work." Bowen v. Yuckert, 482 U.S. 137, 142 (1987).

IV. RFC Assessment

Plaintiff contends that the ALJ's RFC assessment was "errant" because the ALJ did not include any limitations related to Plaintiff's "blindness in one eye, obesity, [and] panic attack[s]." Plaintiff's Opening Brief, at 2.

At the fourth step of the evaluation process, the ALJ must evaluate the claimant's mental and physical RFC. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The ALJ's step four and RFC discussion appears on pages 14-21 of the ALJ's decision. In this discussion, the ALJ thoroughly reviewed the medical and nonmedical

7

evidence and provided a detailed discussion of the reasons for and the medical and nonmedical evidence supporting the RFC finding. The ALJ ultimately found that Plaintiff had the RFC to perform work at all exertional levels but that she could perform jobs requiring only one-to-two step tasks and she could not have contact with the general public or supervisors.

Plaintiff provided no medical evidence of blindness in one eye, although her mother testified at the hearing that Plaintiff was "legally blind in one eye." (TR 36). Even so, Plaintiff's mother testified that Plaintiff had normal vision in her other eye and had been cleared by her treating doctor to drive. The consultative psychological examiner, Dr. Crall, reported that Plaintiff had "noted" the presence of vision impairments while describing her medical history and disabling conditions, but Dr. Crall did not elaborate or perform any vision testing. (TR 377).

Plaintiff's mother is not a medical professional. Her lay testimony is not medical evidence. No treating or consultative physician indicated that Plaintiff had a vision impairment that would restrict her ability to work. Under these circumstances, the ALJ did not err by failing to include additional work-related restrictions in assessing Plaintiff's RFC.

Plaintiff next contends that the ALJ should have included restrictions related to her "obesity," but the medical record contains no evidence, and Plaintiff has pointed to none, indicating that Plaintiff's weight caused any physical limitations restricting her ability to work. Dr. Clark, who evaluated Plaintiff for her attorney in February 2013 after the date Plaintiff alleged she became disabled, stated that Plaintiff was "mildly overweight." (TR

411). Plaintiff's treating family physician, Dr. Stewart, noted in May 2012 that Plaintiff was "overweight" and that her blood pressure was well controlled on medication. (TR 396-97). Plaintiff was reportedly increasing her exercise in order to lose weight and "having some initial results." (TR 396). Under these circumstances, the ALJ did not err by failing to include exertional limitations in assessing Plaintiff's RFC.

Finally, Plaintiff alleges the RFC assessment should have included additional restrictions related to her "panic attacks." The ALJ found, however, that Plaintiff had a severe impairment due to bipolar and anxiety disorders and included restrictions in the RFC assessment to accommodate functional limitations stemming from these mental impairments. Specifically, the limitation to one-to-two step tasks accommodates Plaintiff's subjective statements that unusually stressful situations caused her to experience increased anxiety and panic attacks. Also, the RFC limitations with respect to contact with the general public and supervisors accommodates Plaintiff's subjective statements that she experiences increased stress and panic attacks when she is in public or around people. In September 2012, she complained to Dr. Ellis, her treating mental health professional, that she was experiencing "social anxiety." (TR 408). She was advised to continue her psychotropic medications. In December 2012, Plaintiff reported she was improved. (TR 405). Plaintiff again noted her anxiety and depression symptoms had improved in May 2012 and that one medication, Abilify®, had decreased her anxiety. (TR 477). According to Dr. Ellis, Plaintiff was "overall more stable" and exhibited only "slight depression and anxiety" in July 2013. (TR 425). Plaintiff reported to Dr. Ellis in April 2014 that one medication prescribed by Dr. Ellis,

9

as a mood stabilizer, Trileptal®, was significantly helping to stabilize her moods. (TR 442). Although Plaintiff described having "panic" attacks, she related this symptom to being "around people." (TR 442).

In February 2013, the agency's medical reviewer, Dr. Holloway, noted that Plaintiff's "condition may result in some social difficulties as well as a negative reaction to criticism at times, [but] she shows the ability to relate effectively in general," and she had "adequate concentration skills and is judged to be capable of performing routine work tasks effectively over time." (TR 68). The work-related limitations ascribed in the ALJ's RFC assessment adequately accommodated the functional limitations described by Plaintiff as resulting from her anxiety disorder and "panic attacks." The RFC assessment is supported by substantial evidence in the record.

Although the record contains medical opinions supportive of Plaintiff's allegation of disabling impairments, the ALJ provided adequate reasons that are well supported by the evidence to reject or provide little weight to those opinions. The ALJ provided reasons for finding that Plaintiff's allegations of disabling mental and physical impairments were not entirely credible, and Plaintiff does not question that assessment. The ALJ presented an appropriate hypothetical inquiry to the VE that adequately reflected all of the limitations in the RFC assessment. The VE's testimony provides substantial evidence to support the ALJ's step five finding of nondisability. Accordingly, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before       August 10th     , 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     21st        day of     July       , 2016.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE